**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

YOUNES KABBAJ,                    :
                                         :
               Plaintiff,        :
                                           :
       v.                            :       Civil Action No. 12-1322-RGA/MPT
                                           :
MARK SUTHERLAND SIMPSON, a/k/a    :
MARK SHERMAN SIMPSON,         :
                                           :
               Defendant.       :

## <u>REPORT AND RECOMMENDATION</u>

## I.     **Procedural Background**

       Plaintiff, Younes Kabbaj, acting pro se, initially filed this action in the United

States District Court for the Southern District of New York on October 2, 2012, against

defendant, Mark Sutherland, asserting claims for declaratory and injunctive relief and

damages for tortious interference of contract, breach of contract and defamation.

Plaintiff previously sued defendant, among others, in this court in *Kabbaj v. American

School of Tangiers*, C.A. No. 10-431-RGA/MPT.  According to the record in that matter,

service of process was never effectuated on defendant.[1]  That matter settled; however,

pursuant to the order of April 24, 2012, plaintiff was required to obtain permission of this

court before initiating any new civil action against any individual released under the

settlement agreement.[2]  Because of that order, the New York court transferred the

present matter to this court on October 12, 2012.  Subsequently, on November 2, 2012,

---

[1] Service was only effected on AST, a Delaware corporation.  No summons was returned on any
other named defendant.
[2] *See* D.I. 52, 54 (10-431).  Plaintiff bases his claims primarily on the terms and conditions of the
settlement agreement which he asserts defendant has violated.

this court granted plaintiff permission to file the present action against defendant.[3] According to that order, plaintiff was required to ascertain the proper court in which to file his action where personal jurisdiction and effective service of process could be obtained.  In addition, if plaintiff determined the District of Delaware was the proper forum, he was required to effectuate service of process on defendant on or before November 27, 2012.  Plaintiff purportedly served defendant on November 24, 2012.[4]

Thereafter, on December 7, 2012, defendant filed motions to dismiss for lack of personal jurisdiction and failure to state a claim.[5]  In response, plaintiff filed a first amended complaint under FED. R. CIV. P. 15(a)(1)(B) on December 24, 2012.[6]  Because of plaintiff's amended complaint, the court denied as moot defendant's previously filed motions.[7]

Subsequently, a number of motions were filed by plaintiff which were denied by this court on March 7, 2013.[8]  Plaintiff filed objections on March 21, 2013, and defendant filed his response to plaintiff's objections on March 25, 2013.[9]  The March 7 decision was adopted by the Honorable Richard G. Andrews on April 8, 2013.[10]

---

[3] D.I. 4.

[4] *See* D.I. 5, 6.  Two different summons returns were filed with the court–one indicating service occurred on November 19, 2012 in Portland, Oregon, with the other claiming service was made on November 24, 2012 in New York City.

[5] D.I. 9, 10.

[6] D.I. 12.

[7] D.I. 18.

[8] The opinion addressed plaintiff's motion to compel disclosure against third-party ISP providers, a second motion to extend page limitation (for a sur-reply brief), a motion to amend his first amended complaint, a motion for leave to file a sur-reply brief, and motion to amend pleadings.  Because the court denied plaintiff's various motions, defendant's motion to strike was denied as moot.  *See Kabbaj v. Simpson*, C.A. No. 12-1322-RGA/MPT, 2013 WL 867751 (D. Del. Mar. 7, 2013).

[9] D.I. 43, 44.

[10] *Kabbaj v. Simpson*, C.A. No. 12-1322-RGA/MPT, 2013 WL 1405948 (D. Del. Apr. 8, 2013).

On December 31, 2012, defendant renewed his motion to dismiss for lack of personal jurisdiction, as well as moving to strike the pleadings and for failing to state a claim under Rule 12(b)(6).[11]  Plaintiff responded to defendant's motions on January 17, 2013.[12]  Defendant's reply brief on his motions was filed on January 22, 2013.[13]

This report and recommendation addresses defendant's motions for lack of personal jurisdiction, failure to state a claim and to strike plaintiff's pleadings as containing scandalous and irrelevant material.[14]

In analyzing defendant's motions, the court is cognizant of the more liberal approach granted pro se litigants like plaintiff; however, pro se parties are required to follow rules of procedure and substantive law.[15]  The court is further aware that the present matter is at least plaintiff's third experience in the civil litigation system having filed previous actions in this jurisdiction and in Florida.  Plaintiff also had the wherewithal to obtain the proper training to permit him to file materials with the court electronically.[16]  He is neither a novice nor unfamiliar with the federal court system.

---

[11] D.I. 15, 16.

[12] D.I. 22, 23.  In D.I. 22, plaintiff incorrectly captions his answering brief as a "reply" brief.  The court views that document as his answering brief.  Plaintiff's request to extend the page limitation by six pages was granted on January 18, 2013.  D.I. 24.

[13] D.I. 25.

[14] D.I. 15.

[15] *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Farretta v. California*, 422 U.S. 806, 834 n. 46 (1975) (finding pro se status is not a license to disregard procedural rules or substantive law).  This circuit has repeatedly adhered to Supreme Court precedent in that regard.  *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 567, 570 (3d Cir. 1996); *Lewis v. Williams*, C.A. No. 05-013-GMS, 2010 WL 2640188, at *3 (D. Del June 30, 2010) (proceeding as a pro se litigant does not give a party the right to "flagrantly disregard the Federal Rules of Civil Procedure in an effort to manipulate rulings in his favor"); *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 604 (D. Del. 2007).

[16] *See Kabbaj v. Obama, et. al.*, C.A. No. 11-cv-2349-MCG, and the two civil actions filed in this court; *see also* D.I. 8 (order granting plaintiff's request to file electronically).

## II.    Background[17]

Plaintiff's relationship with defendant began when defendant became the new

headmaster of the American School of Marrakesh, which is the Marrekesh branch of

American School of Tangiers ("AST") in September 2008.[18]   At the time of defendant's

hire, plaintiff was already employed as Head of Technology for AST, a non-profit

educational institute which owns and operates two kindergarten through 12th grade

school campuses in Morocco.[19]   According to plaintiff, shortly after defendant's

employment began, difficulties arose between them, most of which occurred during their

employment with AST.   In his present complaint, plaintiff lists a number of incidents

between them, which eventually led to both parties either being terminated or leaving

their employment with AST.   These incidents, which occurred in Morocco, were the

bases of plaintiff's original action in this court which was settled in April 2012, but are re-

alleged in the present matter.[20]   His present action also includes allegations regarding

incidents of purported defamation by defendant after settlement of the first Delaware

_____

[17] Any *facts relevant* to the issues of defendant's motion are primarily from plaintiff's first amended complaint and his answering brief filed in this matter, and his third amended complaint filed in the United States District Court for the Southern District of Florida.  *See* D.I. 12, D.I. 15, Ex. A, and D.I. 22.  Not all facts raised by plaintiff in those documents are pertinent to the issues to be addressed.  Further, not all allegations by plaintiff are facts–rather his complaints and answering brief contain mostly conclusory statements and opinion.
    In the instant matter, plaintiff's claims are for breach of contract, tortious interference of contract and defamation.  The contract at issue is the settlement agreement and release executed in April 2012 to resolve the first Delaware action.

[18] D.I. 12 at ¶ 29.  As noted herein, AST was a defendant in the first action filed in this court, *Kabbaj v. American School of Tangiers*, C.A. No. 10-431-RGA/MPT.  In that matter, plaintiff not only sued AST and defendant, but three other named individuals, as well as the Board of Directors of AST.

[19] *Id.*

[20] *Id.* at ¶¶ 29-59.  Since settlement in the first Delaware action occurred in April 2012, all wrongful acts by defendant in that matter occurring prior to the settlement date were released under the settlement agreement.  As a condition of the Delaware settlement, plaintiff dismissed defendant and other co-defendants who were also sued in the Florida action.  The orders of dismissal filed in the Delaware and Florida courts were with prejudice.  *See Kabbaj*, 10-431-RGA/MPT D.I. 54; *see also Kabbaj v. Obama, et. al.*, C.A. No. 11-cv-23492-MGC at D.I. 38.

action.

Plaintiff filed his first action in this jurisdiction against AST, defendant and others

in 2010.[21]  He also sued AST, defendant and others in the United States District Court

for the Southern District of Florida in 2011.[22]

Regarding the first Delaware action, plaintiff admits in the amended complaint in

the instant matter that he:

> attempted to serve the Defendant . . . , but could not locate him without
> expending substantial resources he did not have, due to . . .  Defendant
> Simpson sold his last known residence in California and had moved to
> France, and he did not provide a forwarding address in France where he
> could be located.
>
> 61.  After Defendant Simpson left Marrakesh, he thereby began to evade
> Plaintiff while moving around the world.[23]

Plaintiff represents he is a resident of Florida and claims defendant is a resident

of New York City, California, Oregon, Paris, France and elsewhere, who purportedly has

multiple residences, changes his location frequently, and lives in various other countries

around the world.[24]  Plaintiff further admits that "both Plaintiff and Defendant have no

personal connection to Delaware," but somehow "are bound" to litigate this matter in this

jurisdiction, because the target of the tortious conduct is AST, which is a Delaware

corporation.[25]  Plaintiff, however, also acknowledges defendant's only connection to

Delaware was a conference he attended in this state in 1998.[26]  Plaintiff further

represents he was unable to accomplish service over defendant in the first Delaware

---

[21] *See* D.I. 1, *Kabbaj*, C.A. No. 10-431-RGA/MPT
[22] D.I. 16, Ex. A.
[23] D.I. 12 at ¶¶ 60-61.
[24] *Id.* at ¶ 3.
[25] *Id.* at ¶ 10.
[26] *Id.*; D.I. 16, Ex. C (Mark S. Simpson aff.) at ¶ 7.

5

action "because he [defendant] was rumored to be hiding out in France with the intent to evade litigation . . . ." Plaintiff, however, contends, that because AST is incorporated in Delaware, defendant was employed by AST, and his present wrongful acts target AST, personal jurisdiction over defendant by this court is justified.[27]

Paragraphs 68 through 73 of his amended complaint outline how defendant has defamed not only plaintiff, but others and his alleged attempted extortion of money from AST. In paragraphs 74 through 123, plaintiff explains in great detail how defendant allegedly defamed him through use of the Internet via defendant's blogs, websites and emails, in English, French and Arabic languages which are "native to Morocco, and other regions of the world (including the Middle East and Europe)."[28] Plaintiff cites to various books authored by defendant which he claims are equally defamatory.[29] Plaintiff, however, also maintains defendant's book tours posted on Amazon, none of which were in the United States, were fictitious.[30]

In his first claim, plaintiff seeks declaratory and injunctive relief against defendant for libel per se, requesting all defamatory statements be removed from any website or blog, to restrict and remove a book authored by defendant from publication and sale, and to enjoin defendant from future defamatory statements regarding plaintiff.[31] His second claim is for breach of contract because defendant has purportedly continued to defame him in violation of the 2012 settlement agreement. Because of defendant's conduct, plaintiff also asserts that he "has and will continue to breach" the confidentiality

---

[27] D.I. 12 at ¶¶ 10-12.
[28] *Id.* at ¶ 116.
[29] *Id.* at ¶¶ 101-106.
[30] *Id.* at ¶ 107.
[31] *Id.* at ¶¶ 124-126.

provisions of that agreement, which subjects him to potential exposure to reimburse AST for the full settlement amount.[32]  Plaintiff acknowledges this claim may be dismissed if AST does not seek reimbursement from him for those admitted violations. Plaintiff's third claim, although captioned as breach of contract, is couched as tortious interference because defendant's purported conduct has made it "impossible" for plaintiff to comply with the confidentiality provisions of the 2012 settlement agreement. Again, if AST does not enforce those terms, then this claim could also be dismissed.[33] As evidenced by plaintiff's admissions in claims two and three, AST, not defendant, provided the funds for settlement of the first Delaware action.  His fourth claim is for damages for libel per se.

As noted herein, plaintiff acknowledges neither party to this action has any connection to Delaware, except for the settlement agreement in the first litigation.

According to the docket entries in the present matter, two summons returns were filed November 27, 2012, representing that defendant was purportedly served on November 19 and November 24, 2012.[34]  A review of those returns show that on November 19, 2012, a process server left a summons obtained from this court at the door of an apartment in Portland, Oregon.  When service was attempted on November 13, 2012, "an unnamed male occupant" advised via the intercom that defendant did not reside there.  Without seeing that individual, the process server concluded "defendant" was lying and left the summons at the door of the apartment.  In addition, a copy of the

_____

[32] *Id.* at ¶¶ 127-131.
[33] *Id.* at ¶¶ 132-136.
[34] *Id.* at ¶¶ 5, 6.

summons was sent by certified mail to the Oregon address.  Thus, there is no evidence that a copy of the summons and complaint were delivered to defendant personally, that a copy of the these documents were left at defendant's dwelling or usual place of abode or with someone of suitable age, or that the appropriate documents were delivered to an agent authorized by appointment or by law to receive service of process.[35]

Regarding the second alleged service, according to the affidavit of the process server, on November 24, 2012, a summons was left with a doorman at the New York City apartment complex where defendant lived, but was not present.  This summons, however, was obtained from the Southern District of New York, but was "served" after the matter was transferred to Delaware.[36]  That "service" directly violates the October 12, 2012 Order of the Southern District of New York.[37]

## III.    Discussion-Personal Jurisdiction

### Standard of Review

Under a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(2), the court must "accept as true all allegations of *jurisdictional fact* made by the plaintiff and resolve all factual disputes in the plaintiff's favor."[38]  When a jurisdictional defense is raised, the plaintiff "bears the burden of establishing with reasonable particularity that sufficient

---

[35] *See* FED. R. CIV. P. 4(e).

[36] *Id.* at ¶ 24; D.I. 6.  Before initiating any action against those individuals released in the first Delaware action, plaintiff was required to obtain permission from this court which he failed to do.  Because of that failure, the Southern District of New York transferred the matter to this court.  No where in the transfer order does the New York court conclude personal jurisdiction over defendant exists in Delaware.  Rather, that court specifically noted "Plaintiff's submission fails to demonstrate that he has complied with the April 24, 2012 Order" of this court. *See* D.I. 2.

[37] *See* D.I. 2.  In her transfer order, Judge Preska ordered that no summons be issued from the Southern District of New York.

[38] *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006) (emphasis added).

minimum contacts have occurred between the defendant and the forum state to support jurisdiction," as through "sworn affidavits and competent evidence."[39]  The plaintiff cannot not rely on mere allegations; rather, he must provide actual proof.[40]  Rule 12(b)(2) requires the court to dismiss a case when it lacks personal jurisdiction over the defendant.[41]  In order for personal jurisdiction to exist, the plaintiff must adequately satisfy two requirements:  statutory and constitutional.  Under the statutory requirement, the court's analysis is whether there is a statutory basis for jurisdiction pursuant to the forum's long-arm statute.[42]  Under the constitutional requirement, the court's analysis is whether the exercise of jurisdiction comports with the defendant's right to due process.[43]  Therefore, in determining whether personal jurisdiction exists, the court engages in that two step analysis.

A plaintiff must establish either specific jurisdiction or general jurisdiction.  Specific jurisdiction applies when the cause of action arises from contacts within the forum state.  General jurisdiction occurs when a defendant has continuous and systematic contacts with the state, regardless of whether those activities are related to the particular cause of action.[44]

Therefore, in the instant matter, despite plaintiff's allegations and arguments to the contrary, it is his obligation, not defendant's, to identify the proper forum and prove

---

[39] *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 669-70 (D. Del. 2008) (internal citations omitted).

[40] *Id.  See also Monsanto*, 443 F. Supp. 2d at 642.

[41] *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000).

[42] Under FED. R. CIV. P. 4(e), a federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.  The applicable state law is found at 10 DEL. C. § 3104(c), the Delaware Long Arm Statute.

[43] *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

[44] *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984).

personal jurisdiction over defendant exists in this district.[45]

**Delaware Long Arm Statute**

The Delaware Long Arm statute, 10 DEL. C. § 3104(c) provides:

(c)  As to a cause of action brought by any person arising from any of the acts enumerated in the section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
(1)  Transacts any business or performs any character of work or service in the State;
(2)  Contracts to supply services or things in this State;
(3)  Causes tortious injury in the State by an act or omission in this State;
(4)  Causes tortious injury in the State or outside of the State by an act or omission outside the State *if* the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5)  Has an interest in, uses or possesses real property in the State; or
(6)  Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties provide otherwise in writing.[46]

Subsection (c)(1)-(3) and (5)-(6) are specific jurisdiction provisions, requiring a nexus exist between the cause of action and the conduct of the defendant as the basis for jurisdiction.[47]  Subsection (c)(4) is a general jurisdiction provision, which requires a greater extent of contacts, but applies when the claim is unrelated to forum contacts.[48] The Delaware Supreme Court applies a liberal construction to § 3104 to the maximum extent possible in order "to provide *residents* a means of redress against those not subject to personal service within the State."[49]

---

[45] *Provident Nat'l Bank v. Calif. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d. Cir. 1987).
[46] 10 DEL. C. § 3104(c) (emphasis added).
[47] *Monsanto*, 443 F. Supp. 2d at 642.
[48] *Applied Biosystems, Inc.*, 772 F. Supp at 1466.
[49] *Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*, 201 F. Supp. 2d 294, 299 (D. Del 2002) (quoting *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997)) (emphasis added).

**Specific Jurisdiction § 3104(c)(1),(2),(3)**[50]

Personal jurisdiction under § 3104(c)(1), (2) or (3) is authorized if the defendant or his agent conducted any business or contracted to supply services or things in Delaware or caused a tortious injury within the state by conduct occurring in the forum. Section 3104(c)(1) requires some act on the part of the defendant occur in Delaware, and the plaintiff's claims arise out of that act.  Under § 3104(c)(2), defendant must also perform the act in the state.[51]  Similarly, § 3104(c)(3) requires the tortious activity to occur in Delaware.  To meet the requirements of § 3104(c)(1)-(3), the conduct of the defendant must be directed at the residents of Delaware and the protections of Delaware laws.[52]  Acts outside the state, however, do not meet the requirements of specific jurisdiction under § 3104(c)(1)-(3).  For example, placing a product into the stream of commerce with an understanding that it may end up in Delaware is insufficient to meet the minimum contacts requirement.[53]

**General Jurisdiction § 3104(c)(4)**

Section 3104(c)(4) is the general jurisdiction provision in tort cases allowing the exercise of personal jurisdiction over a defendant where the defendant's connections with Delaware do not include activities that are the subject of the action, but where he, or through his agents, "regularly does or solicits business, engages in any other

---

[50] The court need not address § 3104(c)(5) and (6) since there is no evidence (or allegation) that defendant owns, uses or possesses any realty in Delaware or that he ever contracted to insure or act as a surety in this state.  *See* D.I. 12, 22.

[51] *Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1046 (D. Del. 1981), *aff'd.*, 681 F.2d 807 (3d Cir. 1982).

[52] *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 274 (D. Del. 1993).

[53] *A.V. Imports, Inc. v. Col De Fratta*, 171 F. Supp. 2d 369, 372 (D.N.J. 2001) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 (1987)).

persistent course of conduct . . .  or derives substantial revenue from services or things used or consumed in the State."  Therefore, although this provision authorizes jurisdiction when both the tortious conduct and the injury occurred outside the state, the defendant must generally be present here.  The focus under § 3104(c)(4) is on whether defendant regularly does or solicits business, engages in any other persistent course of conduct *in the State* or derives substantial revenue from services, or things *used or consumed in the State*.  As noted previously, for general jurisdiction to apply, a greater extent of contacts is required than under specific jurisdiction.

## IV.    Analysis

In his answering brief, plaintiff focuses on his alleged need for jurisdictional discovery, contracts between defendant and AST, defendant's prior employment with AST, "targeted" defamation, defendant's use of Google and Amazon, and the benefit defendant derived from the 2012 settlement as the bases for personal jurisdiction.[54]

Plaintiff's argument for jurisdictional related discovery was previously addressed and denied in this court's findings on March 7, 2013, which were adopted on April 8, 2013.[55]  Basically plaintiff argues he needs to confirm where defendant's postings originate, although he has information they initiate from New York and multiple different locations, including outside the United States.  He has no evidence, nor does he allege, they initiated in Delaware, but contends defendant intended to transmit them here because Google and Amazon are Delaware corporations and by "selecting AST

---

[54] Plaintiff incorrectly asserts because AST is a Delaware corporation, where the defamatory postings originate is irrelevant.  D.I. 22 at 5.
[55] *Kabbaj v. AST*, C.A. No. 12-1322-RGA/MPT, 2103 WL 867751 (D. Del. Mar. 7, 2013), *adopted* 2013 WL 1405948 (D. Del. Apr. 8, 2013).

(another Delaware corporation) as the target of [defendant's] defamatory communications concerning Plaintiff."[56]

Nothing in plaintiff's amended complaint or answering brief warrants jurisdictional discovery.  As noted in its previous decision, plaintiff may not rely on bare allegations in a complaint, nor unsupported averments to justify discovery on personal jurisdiction.[57] "The court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum," and therefore, some competent evidence must "demonstrate that personal jurisdiction over [a] defendant might exist *before* allowing discovery to proceed."[58]  Mere speculation does not justify a fishing expedition by plaintiff to "construct a basis for jurisdiction."[59]  The only facts asserted by plaintiff are to the contrary, specifically, neither he and defendant are residents of nor have any personal connection with Delaware, service was never effected over defendant in the first Delaware action, and defendant's only contact with Delaware was a conference he attended in 1998.

According to the affidavit of defendant, he has never transacted any business in Delaware, nor performed any character of work in this state.  He has never contracted to supply goods or services, does not regularly do or solicit business, engage in any other persistent course of conduct or derive substantial revenue from services, or things used or consumed in this jurisdiction.  Defendant denies any interest, use or possession of real property, or ever contracting to insure or act as a surety in any manner in

---

[56] Plaintiff's "logic" permeates and is repeated throughout his answering brief.
[57] *Mass. Sch. of Law at Andover v. Amer. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997).
[58] *Hansen v. Neumeller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995) (emphasis added).
[59] *Poe v. Babcock Int'l*, 662 F. Supp. 4, 7 (M.D. Pa 1985).

Delaware.[60]  His only direct contact with this state was a workshop in 1998.[61]  Defendant

denies there are any contracts in which both plaintiff and he are signatories, or that he

has seen or executed any settlement agreement with plaintiff.[62]  Plaintiff admits

defendant never executed the 2012 settlement agreement and release.[63]  His only

purported "evidence" that defendant was somehow involved in the settlement of the first

Delaware action is plaintiff's unsubstantiated claim that defendant was involved in

unspecified negotiations with AST before and after the settlement agreement was

signed.  There is nothing evidencing those negotiations occurred or are related to the

2012 agreement.[64]  Moreover, plaintiff does not allege anywhere in his 59 page, 139

paragraph complaint, or in his 26 page 70 paragraph answering brief that defendant

made any appearance or attended any mediation or settlement conference in the first

Delaware action, nor can he.  He has not shown that the signatory to the 2012

settlement agreement, Edward M. Gabriel, was authorized to act as defendant's agent

during the settlement negotiations, and has not refuted defendant's representation of

having no knowledge of the settlement when it occurred.

Plaintiff's argument appears directed to § 3401(c)(3), that is causing tortious

injury (defamation) in the state by an act or omission in this state, a specific jurisdiction

provision.   For that section to operate, a defendant or his agent must be present at the

time of the tortious conduct for the act to be considered committed in Delaware.[65]  As

---

[60] D.I. 16, Ex. C at ¶¶ 1-6.
[61] *Id.* at ¶ 7.
[62] *Id.* at ¶ 8.
[63] D.I. 22 at ¶ 60.
[64] *Id.* at ¶ 19.
[65] *Joint Stock Society v. Heublein, Inc.*, 936 F. Supp. 177, 193 (D. Del. 1996).

14

determined in *Compaq Corp. v. Packard Bell Electronics, Inc.*,[66] the authorization or ratification of a purported defamatory letter sent to Delaware from California was insufficient to constitute an act in Delaware under the long arm statute. Similarly, mailing of promotional materials from outside Delaware into the state does not qualify as an act in Delaware.[67] In the absence of any indication that defendant posted his writings while in Delaware, § 3401(c)(3) does not apply.[68]

　　　As recognized under Delaware law, the posting of remarks, comments, opinions, statements or other electronic messages on the Internet, even assuming they are defamatory, is insufficient to satisfy the minimum contacts for the court to exercise personal jurisdiction.[69] The mere ability to access the postings from one's computer does not confer personal jurisdiction, even though that access is available in Delaware.[70]

　　　To meet the requirements of 10 DEL. C. § 3401(c)(4), the general jurisdiction provision, there must be evidence of systematic and continuous contacts with Delaware.[71] Nothing plaintiff alleges involves any connection to Delaware which satisfies this provision. As mentioned previously, defendant was never served nor

---

[66] C.A. No. 95-22-RRM at 8-9 (D. Del. Feb. 2, 1996) (slip opinion).

[67] *Sears, Roebuck & Co. v. Sears, plc,* 744 F. Supp. 1297, 1302 (D. Del. 1990).

[68] Since § 3104(c)(1) and (2) have the same requirement that the transaction had to occur in Delaware, these provisions are likewise inapplicable to provide personal jurisdiction, particularly in the absence of any reasonable suggestion that defendant transacted any business or provided goods or services in this forum, and in light of defendant's affidavit.

[69] *Kane v. Coffman,* No. Civ. A. 00C-08-236, 2001 WL 914016, at *5 (Del. Super. Aug. 10, 2001). Moreover, despite what plaintiff may have suggested in his answering brief, he initially alleged in his present complaint that the tortious act, that is posting on the Internet, occurred in New York. *See* D.I. 12 at ¶ 19.

[70] *Id.* No where in the mammoth filings by plaintiff does he provide any allegation that the posting, blog or Internet sites of defendant have any connection with Delaware.

[71] *Roadside Traffic Sys., Inc. v. Ameriseal Ne. Florida, Inc.*, 705 F. Supp 2d 330, 333 (D. Del. 2011); *Colonial Mort. Service Co. v. Aeronson*, 603 F. Supp 323, 327 (D. Del. 1985).

appeared in the first Delaware litigation.  There is no allegation or evidence that Gabriel, who plaintiff admits negotiated the settlement for AST, acted or was authorized to act as defendant's agent.  Nothing refutes defendant's statement regarding his lack of knowledge of the mediation or settlement at the time they occurred.   Defendant is neither a signatory nor assented to the settlement agreement.  Plaintiff has identified no provisions of that agreement indicating defendant performed any act or agreed to have performed acts in Delaware.

Although plaintiff contends contracts exist between defendant and AST, a Delaware corporation, those contracts are not part of the present action.  In fact, since they are agreements between defendant and ATS, plaintiff has no right to enforce them. In any event, "[i]t is well established law that merely contracting with an entity that is incorporated within [Delaware] does not provide necessary connections between the contract and the forum to support a finding of jurisdiction."[72]

As to defendant's employment with AST, plaintiff acknowledges it occurred outside Delaware, in fact in Morocco.  Absent other sufficient contacts with this forum, defendant's employment with a Delaware corporation alone does not satisfy the requirements of the long arm statute.[73]  Despite plaintiff's arguments to the contrary that somehow AST's status constitutes a legal presence applicable to defendant, § 3104 does not support that proposition, and plaintiff referenced no legal basis for his conflated analysis that "foreign campuses were considered Delaware residents for the

---

[72] *Abajian v. Kennedy*, Civ. A. No. 11425, 1992 WL 8794, at *10 (Del. Ch. Jan. 17, 1992) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).
[73] *Kelly v. McKesson HBOC, Inc.*, Civ. A. No. 99-09-265WCC, 2002 WL 88939, at *17 (Del. Super. Jan. 17, 2002).

purposes of any litigation [defendant] may wish to file against AST, or any litigation AST may wish to file against him."[74]   Any choice of forum provision that may have existed in any contract between AST and defendant is irrelevant since neither AST nor defendant have sued each other in this litigation.   Rather, this action was brought solely by plaintiff against defendant, and plaintiff has not demonstrated any right, standing or endowment to enforce any claims of AST under any of its contracts with defendant.

To the extent plaintiff maintains defendant's purported defamation is directed to AST and its world-wide affiliates (with none identified as located in Delaware), his argument is irrelevant.   As discussed previously, nothing plaintiff alleges authorizes him with the right to sue on behalf of AST, its affiliates or employees.   Although litigants may act as their own counsel under 28 U.S.C. § 1654, the statute does not authorize non-attorneys to represent the interests of others in litigation.[75]   To the extent plaintiff argues that a communication outside of Delaware subjects one to personal jurisdiction in this forum merely because the recipient is, or is connected with, a Delaware corporation is contrary to the law previously discussed.[76]   Similarly, plaintiff's argument that personal jurisdiction is satisfied wherever one reads a purported defamatory statement is legally incorrect.[77]

Regarding plaintiff's suggestion that personal jurisdiction over defendant exists in this forum merely because he sells his books through Amazon and frequently posts to a

---

[74] D.I. 22 at ¶ 30.

[75] *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991).

[76] *See Burger King v. Rudzewicz*, 471 U.S. at 479; *see also Abajian*, 1992 WL 8794, at *10.

[77] *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (finding the posting of alleged defamatory comments on an Internet site "does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)"); *see also* Kane, 2001 WL 914016, at *5.

blog on Google since both entities are incorporated in Delaware, plaintiff provides no legal basis for this proposition.  As discussed, there is no factual basis to conclude defendant posts from Delaware.  There is a complete absence of any facts showing defendant engages in a persistent course of conduct in Delaware.  Rather, the facts only reveal a singular contact approximately 15 years ago.

Plaintiff incorrectly assumes because defendant may have received payments from Amazon, he is subject to jurisdiction in Delaware.  As demonstrated previously, merely contracting with the Delaware corporation is an insufficient jurisdictional contact. Again, there is no factual basis supporting that a substantial number of defendant's books are sold and shipped regularly to this forum.[78]

Therefore, plaintiff has not satisfied the requirements of Delaware law for the exercise of personal jurisdiction over defendant

**Due Process**

Although the court has concluded Delaware law does not authorize the exercise of personal jurisdiction over defendant, for the purpose of completeness, it will analyze whether exercising personal jurisdiction comports with the requirements of due process.

In the second prong of the analysis that is directed to due process concerns, in order to subject a defendant to personal jurisdiction, who is not present within the forum, the court must find, the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of

---

[78] *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 405 (D. Del. 2002).

fair play and substantial justice.'"[79]  Defendant's conduct and connection with Delaware must be such that he should reasonably anticipate or foresee being "haled before a court" in this forum.[80]  Therefore, for the exercise of specific jurisdiction to be constitutional, plaintiff must show that defendant "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State,"[81] when the litigation arises out of those activities.

Where the contacts do not relate to the cause of action, for general jurisdiction to be constitutional, "continuous and systematic contacts" with the forum state must be shown.[82]

The court may not assume personal jurisdiction exists solely based on Internet postings.  Evidence or some factual basis, not conclusions, must demonstrate the postings specifically targeted readers who are physically located in Delaware, not merely generally directed to readers world-wide.[83]  Third Circuit has analyzed the due process requirement from the perspective of operating a commercially interactive website in a trademark infringement matter,[84] adopting the analysis of *Zippo Manufacturing. Co. v. Zippo Dot Com., Inc.*[85]  In *Toys "R" Us*, the court recognized the

---

[79] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[80] *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-109 (1987).

[81] *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hansen v. Denckla*, 357 U.S. 235, 253 (1958)).

[82] *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414-415.

[83] *Shrader,* 633 F.3d 1235, 1241 (10th Cir. 2011); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (finding no personal jurisdiction where alleged defamatory Internet postings were not "uniquely or expressed aimed at Missouri"); *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (concluding since a Connecticut newspaper did not intend to target readers in Virginia through its website, no personal jurisdiction existed in Virginia).

[84] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003).

[85] 952 F. Supp. 1119 (W.D. Pa 1997) (recognized as the seminal authority regarding personal jurisdiction based upon the operation of an Internet website).

mere operation of a commercial website as insufficient to subject the "operator to jurisdiction anywhere in the world.  Rather there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site in the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."[86]  The court acknowledged the Fourth Circuit decision in *ALS Scan v. Digital Service Consultants, Inc.*,[87] which recognized the purposeful availment requirements consistent with *Zippo* by holding:

> a State may, consistent with due process, exercise judicial power over a person outside the State when that person (1) directs electronic activity *into* the State, (2) *with the manifest intent of engaging in business or other interactions within the State*, and (3) that activity creates, *in a person within* the State, a potential cause of action cognizable in the State's courts.[88]

No exhibit or unsupported conclusory statements by plaintiff suggest that defendant specifically directed any electronic activity to Delaware residents, or that he manifestly intended to engage in business, transactions or other interactions within this forum, or that his Internet activities created any cause of action in a person within this state a cause of action.  At most the postings and emails on which plaintiff relies, demonstrates defendant in blogs and other Internet sites directed his comments and writings to a world-wide audience, which is inadequate to meet due process requirements.  Moreover, as previously noted, plaintiff is admittedly a resident of Florida, not Delaware.  Where, as here, plaintiff is not a resident of the forum state, the

---

[86] *Id.* at 454.
[87] 293 F.3d 707 (4th Cir. 2002).
[88] *Id.* at 714 (emphasis added).

20

interests of the forum in the litigation is "considerably diminished."[89]

After analyzing 10 DEL. C. § 3401(c), applicable case law and plaintiff's complaint,  arguments and exhibits, no basis exists for this court to exercise personal jurisdiction over defendant under Delaware state law or due process.

Because the court has found it lacks jurisdiction over the person of defendant under FED. R. CIV. P. 12(b)(2), it need not address defendant's other motions under Rule 12(b)(6) or to strike pleadings and related filings.

## V.     Order and Recommended Position

Consistent with the findings contained herein,

IT IS RECOMMENDED that defendant's motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) (D.I. 15) be GRANTED, and plaintiff's action be dismissed.  In light of this Recommendation, defendant's related motions to dismiss under Rule 12(b)(6) and to strike pleadings are presently moot.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated November 16, 2009, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

A copy of the Report and Recommendation and this Order were mailed to

---

[89] *Roquette Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 392 (D. Del. 2009) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)).

Younes Kabbaj on June 6, 2013.

Date: June 6, 2013                    /s/ Mary Pat Thynge
                                      UNITED STATES MAGISTRATE JUDGE